

**SIGNED this 16 day of December, 2010.**

_____
    **JOHN T. LANEY, III**
    **CHIEF UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO.: 09-71621- JTL |
| CHARLES L. MERCER | ) | |
| ANNA R. MERCER, | ) | |
| | ) | |
| Debtors. | ) | CHAPTER 7 |

**Memorandum Opinion**

This matter comes before the Court on a Motion to Voluntarily Dismiss filed by the Debtors on October 1, 2010.  The Court heard oral arguments on the motion on November 17, 2010.  At the conclusion of the hearing, the Court took the matter under advisement and permitted parties to file letter briefs. For the reasons set forth below, the Court will deny the Debtors' Motion to Voluntarily Dismiss.

**Background**

The Debtors filed this case as a Chapter 13 on October 2, 2009, to save residential property from foreclosure.  Ameris Bank was the lienholder for a business loan secured by the Debtors' residence. The Chapter 13 plan proposed by the Debtors, and prepared by their original counsel Rodney Allen, had no provision to pay Ameris Bank.   On December 30, 2009, Ameris Bank filed a Motion for Relief from Stay as to the Debtors' residence because of postpetition arrearage and because the plan did not adequately cure prepetition arrearage.  The motion for relief was unopposed, and after the hearing on the motion on January 27, 2010, the motion was granted.

At some point after the grant of relief, Mrs. Mercer and her son contacted Rodney Allen about the prospects of saving the residence.   According to Mrs. Mercer's testimony, Mr. Allen advised them that nothing could be done to save the property unless the Debtors converted to a Chapter 7.  Mrs. Mercer also testified that she specifically told Mr. Allen she did not want to convert the case, and Mr. Mercer testified that he had no communication with Mr. Allen after initially filing the Chapter 13.   Nevertheless, on April 26, 2010, Mr. Allen filed a Notice of Voluntary Conversion to Chapter 7 on the Debtors' behalf.  The case was converted on April 27, and also on that day Mr. Allen filed a Motion to Extend the Automatic Stay, apparently mistakenly believing that the motion, if granted, could prevent Ameris Bank from foreclosing.  On that same day, Mr. Mercer signed an affidavit that was attached to the Motion to Extend the Automatic Stay in the new Chapter 7 case.  The affidavit explains why the Debtors did not oppose Ameris Bank's Motion for Relief from the Automatic Stay in the Chapter 13 case—that

the Debtors thought they had an arrangement with Ameris Bank that would save their house.  The Motion to Extend the Stay was summarily denied.

On October 1, 2010, Shelba Sellers—the Debtors' new attorney in this case—filed a Motion for Voluntary Dismissal on the Debtors' behalf.  The motion stated that the residence had been foreclosed on, that the Debtors were in the process of getting a reverse mortgage to redeem their residence, and that the Debtors wished to pay their unsecured creditors directly.  On October 22, 2010, the Chapter 7 Trustee filed his objections to the motion, claiming that the Debtors have valuable assets that are property of the estate that can be liquidated; included in these assets, according to the Trustee, are assets that were omitted from the Debtors' schedules.

On November 17, 2010, the Court held a hearing on the Motion for Voluntary Dismissal.  At the hearing, the Debtors' son testified he was holding $90,000 through the sale of postpetition sale of equipment title to an LLC solely owned by the husband debtor.  He also testified that Ameris Bank agreed to accept $70,000.00 in full settlement and to deed the Debtors' home back to the Debtors, leaving $20,000.00 to pay unsecured creditors.  Throughout the case, the value of the family business and its assets have been scheduled at $0.00; the Debtors have never amended their schedules to reflect a higher value, and the sale of the equipment was never reported to the Trustee.

## Conclusions of Law

The Debtors seek to dismiss their case under 11 U.S.C. § 707(a).  Although § 707(a) does not explicitly refer to voluntary dismissals, bankruptcy courts routinely apply § 707(a) to a debtor's motion to voluntarily dismiss.  E.g., In re Turpen, 244 B.R. 431, 434 (B.A.P. 8th Cir. 2000) (citing In re Williams, 15 B.R. 655, 658 (E.D. Mo. 1981); In

re Watkins, 229 B.R. 907, 909 (Bankr. N.D. Ill. 1999); In re Eichelberger, 225 B.R. 437,

439 (Bankr. E.D. Mo. 1998)).  A debtor has no absolute right to a voluntary dismissal of

a Chapter 7 case.  Id.  "Rather, a debtor seeking dismissal must show 'cause.'"  In re

Smith, 507 F.3d 64, 72 (2d Cir. 2007) (quoting 11 U.S.C. § 707(a)).  The Bankruptcy

code does not define "cause," and the three examples listed in § 707(a) are not exclusive

but rather illustrative.  Id. (citing In re Padilla, 222 F.3d 1184, 1191 (9th Cir. 2000); In re

Simmons, 200 F.3d 738, 743 (11th Cir. 2000)).  Consequently, courts must view the facts

case-by-case to determine whether sufficient cause exists for dismissal.  In re Dinova,

212 B.R. 437, 442 (B.A.P. 2d Cir. 1997) (citing In re MacFarlane Webster Associates,

121 B.R. 694, 697 (Bankr. S.D.N.Y. 1990)).  The burden for demonstrating cause is on

the debtor, In re Simmons, 200 F.3d 738, 743 (11th Cir. 2000), and determination of

cause is within the sound discretion of the bankruptcy court, e.g., In re Jabarin, 395 B.R.

330, 337 (Bankr. E.D. Pa. 2008).  If the debtor shows cause, the court nevertheless

"should deny the motion if there is any showing of prejudice to creditors."  In re Turpen,

244 B.R. at 434 (citing In re Haney, 241 B.R. 430, 432, (Bankr. E.D. Ark 1999); In re

Watkins, 229 B.R. at 909; In re Eichelberger, 225 B.R. at 439; In re Harker, 181 B.R.

326, 328 (Bankr. E.D. Tenn. 1995)).

The court in In re Turpen outlined the factors courts generally consider when

ruling on a voluntary motion to dismiss and whether prejudice exists:

> (1) whether all of the creditors have consented; (2) whether the debtor is
> acting in good faith; (3) whether dismissal would result in a prejudicial
> delay in payment; (4) whether dismissal would result in a reordering of
> priorities; (5) whether there is another proceeding through which the
> payment of claims can be handled; and (6) whether an objection to
> discharge, an objection to exemptions, or a preference claim is pending.

244 B.R. at 434 (citing <u>Watkins</u>, 229 B.R. at 909; <u>In re Eichelberger</u>, 225 B.R. at 439; <u>In re Harker</u>, 181 B.R. at 328; <u>In re Klein</u>, 39 B. R. 530, 532 (Bankr. E.D.N.Y. 1984); <u>In re Pagnotta</u>, 22 B.R. 521, 522 (Bankr. D. Md. 1982)).   The test is essentially two-pronged: the Debtor must show cause, and if the Debtor shows cause, the Court can nevertheless deny the motion for dismissal if the above factors demonstrate prejudice to creditors.   In the present case, the Debtors have failed to show sufficient cause, and even if they had, the factors in the second prong weigh heavily against the Debtors.

## I.      The Debtors Have Not Shown Cause

The Debtors' argument for cause essentially rests on three grounds: (1) their attorney's alleged incompetence, (2) their attorney's converting the case against their wishes, and (3) their willingness to pay their unsecured creditors in full outside of bankruptcy.   The first two grounds are tied together. Their attorney Rodney Allen prepared an inadequate Chapter 13 plan, and rather than amending to cure that problem, he let a motion to lift stay go unopposed; he then converted the case to a Chapter 7 and filed a motion to extend the stay, both under the incorrect belief that those actions could save the Debtors' residence.   The Debtors concede that because people are bound by the actions of their lawyers, they are validly in a Chapter 7 case.   Moreover, the Court is not entirely convinced that Mr. Allen unilaterally went against the express wishes of both Mr. Mercer and Mrs. Mercer.   Mr. Mercer testified he had no communication with Mr. Allen about converting, and in fact he testified that had no communication with Mr. Allen after leaving Mr. Allen's office after filing for Chapter 13.   Yet Mr. Mercer signed an affidavit on April 27—the same day the case was converted—supporting a motion to extend stay in the new Chapter 7 case.   This affidavit demonstrates that Mr. Allen had at least *some*

communication with Mr. Mercer when the case was converted, and it suggests that Mr.

Allen did not unilaterally and without permission convert the Debtors' Chapter 13 to a

Chapter 7.

The Debtors also claim they will pay their unsecured creditors in full outside of

bankruptcy.  There is a line of cases holding that a Debtor's ability to repay debts does not

establish sufficient cause for dismissal.  See, e.g., In re Turpen, 244 B.R. at 434.  There is

another line of cases holding the other way, a line that does not exclude the ability to

repay debts from constituting cause for dismissal.  See, e.g., In re Smith, 507 F.3d 64, 72

(2d Cir. 2007) (noting also that the ability to repay debts is not *per se* grounds for

dismissal).  The Court does not need to pick a side in this debate because the Debtors have

not established their ability to repay their unsecured creditors.  In fact, the Debtors have

severely decreased their ability to pay creditors. Because the Debtors liquidated the

majority of their business assets to save their residence, the income from their business, if

any, will be substantially less.  Excluding any business income, the Debtors' income is

$602.00 in Social Security benefits and $250.00 in rental income, for a total of $852.00 in

household income.  Excluding business expenses, Schedule J shows household expenses

of $1,811.67.  Without their business, the net household income is -$959.67.

According to the Debtors, Ameris Bank has agreed to accept $70,000.00 in full

settlement and to deed the Debtors' residence back to the Debtors.   They received

$90,000.00 from the sale of the business equipment, leaving $20,000.00 to go toward the

$55,126.81 in other unsecured debt, for a dividend of 36.3%.  Other than the $90,000.00,

the Debtors' other assets include rental property valued at $12,000.00, unimproved real

estate valued at $40,000.00, other unencumbered business assets with an unknown value,

and the Trustee has a potential claim to avoid the Debtors' transfer of other real estate to their daughter.  The total value of the known assets is $142,000.00.  The Debtors' total debt includes a deficiency of $136,546.00 owed to Ameris Bank and the $55,126.81 owed to other unsecured creditors, for a total of $191,672.81.  If just the assets with a *known* value were used to pay the non-Ameris Bank creditors through Chapter 7, they would receive a dividend of 74.1%.  Thus, the non-Ameris Bank creditors would receive substantially less outside of the Chapter 7.

The Debtors do state that they would try to get a reverse mortgage to pay the rest of their debt.  This is tantamount to not saying anything at all.  The Debtors offered no evidence of their ability to obtain a reverse mortgage.  Outside of bankruptcy, there is no mechanism to ensure the Debtors actually go through with this plan, and even if they did, there is no mechanism to ensure any of the money would actually go to pay off the creditors.  The Court requires more than a promise to ensure that the creditors would get as much outside of Chapter 7 as they would inside of Chapter 7 to grant the motion to dismiss.

## II.    The Factors Demonstrate Substantial Prejudice

Even if the Debtors were able to show sufficient cause, the factors test demonstrates substantial prejudice to creditors.

(1) *Whether all creditors have consented to dismissal*: While there have been no claims or objections to discharge, the absence of claims or objections "is quite a different thing from saying that all creditors have consented to the dismissal of a bankruptcy case." In re Pagnotta, 22 B.R. 521, 522 (Bankr. D. Md. 1982).  Because all creditors have not consented, this factor weighs against the Debtors.

(2) *Whether the Debtors are acting in good faith*:  The Debtors have done a number of things that raise questions about whether they have acted in good faith. Probably the most glaring action is selling $90,000.00 worth of unscheduled assets, which were property of the estate, for the explicit purpose of paying Ameris Bank. Moreover, Mr. Mercer testified that the business still owns other unencumbered and unscheduled assets.  Through the entire bankruptcy case, the value of the Debtors' business has been listed at $0.00.  Among other examples of potential bad faith is that the Debtors, less than a year before filing for bankruptcy, quitclaimed real estate to their daughter; this transfer was not listed on the Debtors' Statement of Financial Affairs.

(3) *Whether dismissal would result in prejudicial delay in payment*:  The Debtors intend to pay Ameris Bank first, in full, and then pay their other creditors.  Whether they are able to pay their other creditors in full and when they will be able to pay them are unanswerable.  Moreover, despite the Debtors' testimony that they were current on their bills when they filed for bankruptcy, Schedule F shows over $20,000.00 worth of credit card debt in collection.  It has been over fourteen months since this case was filed.  "A dismissal would have the effect of returning said creditors to *status quo ante* and would relegate them to proceeding anew in enforcement of their claims. Not only would an order of dismissal, in such context, create substantial prejudice to creditors in causing further delay, but it would implicitly sanction an abuse of the bankruptcy process."  In re Klein, 39 B.R. at 532-33.  There is no assurance that creditors will be paid outside of bankruptcy.  Conversely, if the case is not dismissed, the Trustee will liquidate the estate's substantial assets and distribute the proceeds pro rata.

(4) *Whether dismissal would result in a reordering of priorities*:  As previously stated, the Debtors want to pay Ameris Bank—which is currently an unsecured creditor—in full before they pay any other creditors.  This reordering of priorities outside of bankruptcy would also result in less money to other creditors than they would receive through the Chapter 7.

(5) *Whether there is another proceeding through which the payment of claims can be handled*:  There is no proceeding on the horizon to repay the claims, and there has been nothing suggested by the Debtors.

(6) *Whether an objection to discharge, an objection to exemptions, or a preference claim is pending*: No objection exist, nor is there a preference claim.  However, as noted above, the Debtors transferred real estate to their daughter less than a year before the Debtors filed for bankruptcy.  The Trustee is currently investigating this potential avoidance claim.

## Conclusion

The Court will deny the Debtor's motion to dismiss their Chapter 7 case.  An order in accordance with this memorandum opinion will be entered.